# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>Hoku Corporation,<br><br>              Debtor. | Bankruptcy Case<br>No. 13-40838-JDP |
| R. Sam Hopkins, Chapter<br>7 Trustee,<br><br>           Plaintiff,<br>vs.<br><br>Darryl Nakamoto, an<br>individual; Jeremy Xiaoming<br>Yin an individual; Jerrod<br>Schreck, an individual;<br>Scott Paul, an individual;<br>Tao (Mike) Zhang, an<br>individual; Dean Hirata, an<br>individual; Karl Stahlkopf, an<br>individual; Yi Zheng, an<br>individual; Wei Xia, an<br>individual; (Adam) Yi Zheng,<br>an individual; Gao Zhengfei, an<br>individual; Jane and John Does<br>1-5, individuals; Tianwei New<br>Energy Holdings Co., Ltd., a | Adv. Proceeding<br>No. 15-08183-JDP |

MEMORANDUM OF DECISION, ETC. – 1

People's Republic of China.
corporation;

Defendants.

## MEMORANDUM OF DECISION AND RULE 9033[1] PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION TO DISTRICT COURT RE DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND NOTICE TO THE PARTIES

**Appearances:**

Steven L. Taggart, Idaho Falls, Idaho, Attorney for Plaintiff R. Sam Hopkins, Chapter 7 Trustee.

James Smith, Boise, Idaho, Attorney for Defendants Jeremy Xiaoming Yin, Tao (Mike) Zhang and Yi Zheng.

Joseph M. Meier, Boise, Idaho and Howard Holderness, San Francisco, California, Attorneys for Defendants Dean Hirata, Darryl Nakamoto, Scott Paul, Jarrod Schreck and Karl Stahlkopf.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION, ETC. – 2

## *I. Introduction*

### A.    Short Summary

This decision examines the legal adequacy of a bankruptcy trustee's

second attempt to sue the directors of a debtor corporation for damages

based upon their decisions as members of the board.  Pursuant to the

request of some of the defendants/directors, the Court determines and will

recommend to the District Court that the amended complaint, like the

trustee's original complaint, when measured against the applicable legal

standard, fails to contain sufficient factual allegations about the directors'

actions to support any cognizable claim for relief against them.  Because

the trustee has had ample time and opportunity to pursue this matter, and

after two attempts, has been unable to frame any proper claims for relief,

the amended complaint against the directors should be dismissed with

prejudice.

### B.    Procedural Background

On April 22, 2016, the chapter 7 trustee for Hoku Corporation

MEMORANDUM OF DECISION, ETC. – 3

("Corporation"), Plaintiff R. Sam Hopkins ("Trustee"), filed an amended

complaint in this adversary proceeding against Defendants Darryl

Nakamoto, Jeremy Xiaoming Yin, Jerrod Schreck, Scott Paul, Tao (Mike)

Zhang, Dean Hirata, Karl Stahlkopf, Yi Zheng,[2] Wei Xia, Gao Zhengfei, and

Tianwei New Energy Holdings Co., Ltd.  Dkt. No. 74.[3]  Among other

claims, the amended complaint alleged that, while acting as directors of

Corporation, the individual defendants breached the fiduciary duties they

owed to Corporation and its creditors entitling Trustee to a money

judgment in an unspecified amount equal to the "vast debt incurred [by

Corporation] through these poor decisions."  *See Id.*, Counts One and

Three, *Id.* at ¶¶ 102-103.

> In response to the claims in the amended complaint, two motions to

---

[2] As can be seen, Yi Zheng is mistakenly named a second time in the caption of the amended complaint as "(Adam) Yi Zheng".

[3] Trustee's original complaint against the Yin and Hawaii Defendants was filed on July 1, 2015.  Dkt. No. 1.  The Defendants filed motions to dismiss all claims in that complaint.  Dkt. Nos. 52, 56.  After a hearing, the Court granted the motions, ordered that Trustee's complaint be dismissed, but granted Trustee leave to file an amended complaint.  Dkt. No. 70 at 1.

MEMORANDUM OF DECISION, ETC. – 4

dismiss were filed: one by defendants Yin, Zhang, and Zheng ("Yin

Defendants"), Dkt. No. 77; the other by defendants Paul, Hirata, Stahlkopf,

Nakamoto, and Schreck ("Hawaii Defendants") (collectively

"Defendants"), Dkt. No. 80.[4]  Trustee filed an objection to the motions, Dkt.

No. 86, and Defendants filed replies.  Dkt. Nos. 89, 90.  The Court

conducted a hearing concerning the motions to dismiss on July 7, 2016, at

which the parties appeared; the Court took the issues under advisement

after the hearing.  *See* Minute Entry, Dkt. No. 91.

   Having considered the pleadings and record, the parties' briefs and

---

   [4] Two other individual defendants, Wei Xia and Gao Zhengfei, have not
joined in the motions, nor have they otherwise appeared in this action.  At the
hearing on the motions, Trustee's counsel explained that those defendants have
not been served.
   The pending motions to dismiss also do not implicate Count Two of the
amended complaint wherein Trustee alleges that the creditor's claim of
defendant Tianwei New Energy Holdings Co., Ltd. ("Tianwei") should be
equitably subordinated.  Amended Complaint, Dkt. No. 74 at ¶¶ 105-115.  A
stipulation to extend the time for Tianwei to respond has been filed, and
approved by the Court, pending a ruling by the Court in Corporation's
bankruptcy case on a motion to approve compromise between Trustee and
Tianwei.  *See* Dkt. Nos. 73, 75, 76.

MEMORANDUM OF DECISION, ETC. – 5

arguments, as well as the applicable law, this Memorandum sets forth the

Court's proposed findings of fact, conclusions of law, reasons for its

decision, and its recommendation to the District Court for disposing of the

motions.  Rules 7052; 9033.[5]

## II.  Factual Allegations

According to the allegations in Trustee's amended complaint,

Corporation, then known as Hoku Scientific, Inc., was originally

incorporated in 2001, and then reincorporated in Delaware in 2004.  Am.

Compl. at ¶ 17, Dkt. No. 74.  At first, the company focused primarily upon

---

[5]  In response to Trustee's original complaint against them, the Yin and
Hawaii Defendants each filed motions asking the District Court to withdraw the
reference in this adversary proceeding.  *See* 28 U.S.C. § 157(d); Dkt. Nos. 12, 18.
On November 18, 2015, the District Court entered a Memorandum Decision and
Order in which, in sum, it denied immediate withdrawal of the reference, and
granted withdrawal of the reference when this Court certifies that the claims
against Defendants are ready for a jury trial, which Defendants have demanded.
*See* 28 U.S.C. § 157(e) (providing that a jury trial may be conducted by a
bankruptcy judge only with the consent of the parties); Dkt. No. 34.  The District
Court directed this Court to preside over all pretrial matters, including routine
and dispositive motions, and to submit proposed findings of fact, conclusions of
law, and a recommendation to the District Court concerning any dispositive
motion.  *Id.* at 12.

MEMORANDUM OF DECISION, ETC. – 6

the development of fuel cell technology and products.  By 2005,

Corporation completed an initial public offering with its shares traded on

NASDAQ.  *Id.* at ¶¶ 18, 20.

In 2006, Corporation's management decided that it should begin to

manufacture polysilicon, a raw material used to make solar panels.  *Id.* at

¶ 26.  To achieve this, in February 2007, Corporation incorporated Hoku

Materials, Inc. ("Materials") as a wholly-owned subsidiary.  *Id.* at ¶ 30.

It was determined that Materials would construct facilities to

manufacture polysilicon ("the Plant").  *Id.* at ¶ 31.  The initial estimate for

the cost to build the Plant was approximately $250 million.  *Id.*  To raise

these funds, Corporation issued debt and equity securities, and Materials

contracted with several customers to prepay for the purchase of

polysilicon to be delivered after the Plant was completed.  *Id.*

The original construction cost estimate proved unrealistically low,

and significant additional funding was to be required to complete the

Plant.  *Id.*  Eventually, in September 2009, to raise more capital,

MEMORANDUM OF DECISION, ETC. – 7

Corporation entered into a stock purchase agreement ("the Agreement")

with Tianwei, the parent company of one of Materials's prepay customers.

*Id*. at ¶¶ 35-36.  Under the Agreement, Tianwei committed to use its assets

as collateral to support a $50 million loan to Corporation from a Chinese

bank, and to cause its subsidiary, Tianwei Wafer, to cancel $50 million in

prepayment debt owed by Materials.  *Id.* at ¶ 36.  In return, Tianwei

effectively acquired a controlling interest (*i.e.*, 60%) of Corporation's

common stock, together with the "right to nominate" four of the seven

directors for Corporation.  *Id.* at ¶¶ 36-37.   In short, through this deal,

Corporation obtained both debt-forgiveness and access to much-needed

credit and cash.  For its part, Tianwei acquired control of Corporation, and

hopefully, the prospect that the Plant would be completed so that

Corporation could fulfill its polysilicon production commitments to its

customers, including Tianwei.

MEMORANDUM OF DECISION, ETC. – 8

Upon closing of the Agreement, Tianwei appointed[6] four directors to manage Corporation (and indirectly, Materials) each of whom, per Trustee's amended complaint, had "strong ties" to Tianwei. *Id.* at ¶ 38. Indeed, two of the four new directors, Zhang and Zhengfei, were employed by Tianwei. *Id.* at ¶¶ 9, 15.

On January 21, 2010, Corporation, Materials, and Tianwei entered into three other agreements. *Id.* at ¶¶ 39-42. First, Materials guaranteed Corporation's performance of its various obligations to Tianwei and its agent banks for the cash loans Corporation was receiving. *Id.* at ¶ 39. Second, Materials and Corporation granted Tianwei a security interest in, and lien upon, certain of their assets as collateral for the expected financing. *Id.* at ¶ 40. And third, Materials granted Tianwei a security interest in the real property on which the Plant was being built. *Id.* at ¶ 41.

---

[6] While, according to the relevant SEC report, Tianwei had the right to *nominate* directors, Trustee alleges that Tianwei actually *appointed* the directors. *Compare* Am. Compl. at ¶ 37 *with* ¶ 38. Regardless, the Court infers from these allegations that, by exercising its rights under the Agreement, Tianwei had the ability to select a majority of Corporation's board members.

MEMORANDUM OF DECISION, ETC. – 9

Following these agreements, acting through its board, Corporation was able to renegotiate Materials's other supply agreements with its non-Tianwei customers, and any security interests held by the other customers in Materials's assets were subordinated to those of Tianwei.  *Id.* at ¶ 42.

In the months and years that followed, more and more funding was needed by Corporation and Materials to operate and to continue construction of the Plant.  Between May 2010 and May 2012, through many individual secured and unsecured loans, Corporation borrowed approximately $339 million from several Chinese lenders.  *Id.* at ¶¶ 43-65.[7] According to the amended complaint, the bulk of these funds were used to pay Materials's vendors and suppliers, and other costs associated with building the Plant.  *Id.* at ¶ 66.  Corporation also used a portion of the loan proceeds to fund its own operations, and, although no specific allegations are provided in the amended complaint, Trustee alleges generally that

---

[7] While not specifically pled in the amended complaint, the Court understands from the arguments of the parties and SEC reports that most of these loans were backed by collateral supplied to the lenders by Tianwei.

MEMORANDUM OF DECISION, ETC. – 10

"significant monies" were transferred to Defendants.  *Id.*  During this same

time period, Corporation's board also approved various expense budgets

that provided for payment of Materials's vendors in the future.  *Id.* at

¶¶ 84-90.

Unfortunately, not only had the construction costs for the Plant

grossly exceeded what had been expected, the price for polysilicon fell

precipitously from $475 per kilogram in February 2008, to less than $16 per

kilogram in December, 2012.  *Id.* at ¶ 75.  During these times, having no

product to sell, Corporation incurred staggering cumulative losses.  *Id.* at ¶

73.  Beginning with its fiscal year 2010, and through mid-2013, Corporation

opined in its annual SEC 10-K reports that it would be unable to continue

as a going concern if it were unable to secure even more financing.  *Id.* at

¶¶ 68-72.[8]  When it was finally concluded that completion of the Plant, and

---

[8] As noted, Trustee generally references several of Corporation's SEC
reports in the amended complaint.  Hawaii Defendants have requested that the
Court take judicial notice of the reports.  Dkt. No. 81.  They also ask the Court to
take judicial notice of certain "Definitive Proxy Statements" and a "Form 10-
K/A" dated July 29, 2009,  based on the "incorporation by reference" doctrine.

MEMORANDUM OF DECISION, ETC. – 11

actual production of polysilicon, was no longer feasible, on July 2, 2013,

Corporation and Materials each filed chapter 7 bankruptcy cases. *Id.* at ¶

77. According to Trustee, Corporation's bankruptcy schedules show that,

as of the petition date, it had approximately $493,000 in assets and

approximately $507 million in liabilities. *Id.* at ¶ 78. Materials's schedules

are alleged to show it had about $7.4 million in assets and approximately

$780 million in liabilities. *Id.* at ¶ 79.

  Some two years after Corporation's bankruptcy case was filed and

---

Request for Judicial Notice at 2-3, Dkt. No. 81. Trustee has not objected to the
request, nor disputed the authenticity of the documents attached to the Request.
"Documents whose contents are alleged in a complaint and whose authenticity
no party questions, but which are not physically attached to the pleading, may be
considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14
F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa
Clara*, 307 F.3d 1119 (9th Cir. 1992); *see also In re Silicon Graphics Inc. Sec. Litig.*, 183
F.3d 970, 986 (9th Cir. 1999), *superceded by statute on other grounds*. Moreover,
courts may take judicial notice of "securities offerings and corporate disclosure
documents that are publicly available." *Gerritsen v. Warner Bros. Entm't Inc.*, 112
F. Supp. 3d 1011, 1031 (C.D. Cal. 2015) (citing *Metzler Inv. GMBH v. Corinthian
Colleges, Inc.*, 540 F.3d 1049, 1064 n. 7 (9th Cir. 2008)). As noted above, Trustee
referenced Corporation's "Annual Form 10-K Report for fiscal year[s]" ending
2007-2011. Am. Comp. at ¶¶ 68-72, Dkt. No. 74. As the Form 10-K/A is an
amendment to Corporation's annual 10-K report for the fiscal year ending 2009,
and the proxy statements are incorporated by reference in the annual 10-K
reports referenced by Trustee, the Court concludes it is proper to take judicial
notice of them.

MEMORANDUM OF DECISION, ETC. – 12

he was appointed, Trustee commenced this litigation.  Alleging that its

directors and Tianwei acted in a manner that  contributed to Corporation's

eventual demise and harmed Corporation's creditors, in his amended

complaint, Trustee is pursuing the individual Defendants and Tianwei in

this action to recover damages for the losses and other relief.  In the

motions to dismiss currently before the Court, Defendants assert Trustee's

amended complaint fails to state any claim against them upon which relief

may be granted, and asks that it be dismissed with prejudice.

### III.  Legal Standard for a Motion to Dismiss

Civil Rule 12(b)(6), made applicable in adversary proceedings by

Rule 7012(b), governs motions to dismiss for failure to state a claim.  The

purpose of such a motion is to "test a claim's legal sufficiency."  *Beach v.*

*Bank of Am. (In re Beach)*, 447 B.R. 313, 318 (Bankr. D. Idaho 2011) (citing

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011)).  To survive a Rule

12(b)(6) motion, a complaint must plead sufficient facts, which when

accepted as true, support a claim that is "plausible on its face."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

MEMORANDUM OF DECISION, ETC. – 13

570 (2007)).  A claim has facial plausibility when the facts pleaded allow

the Court to "draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  But the

"plausibility standard . . . asks for more than the sheer possibility that a

defendant has acted unlawfully." *Id.*

In judging the adequacy of Trustee's amended complaint, the Court

may rely upon its judicial experience and common sense. *Id.* at 679.

Generally, the Court must assume the veracity of all well-pled factual

allegations in the complaint; however, the Supreme Court has made it

clear that the Court need not do the same for legal conclusions couched as

factual allegations. *Id.* at 678-79.  (citing *Twombly* 550 U.S. at 555).

Ultimately, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements will not do." *Twombly*, 550 U.S. at 555

(citations omitted).  And, "[w]here a complaint pleads facts that are

'merely consistent' with a defendant's liability, it 'stops short of the line

between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556

MEMORANDUM OF DECISION, ETC. – 14

U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

### IV.  *Legal Analysis and Recommended Disposition*

### A.    **Dismissal of Non-director Defendants**

First, there is an obvious problem with Trustee's claims against

some of the defendants.  At the hearing, Defendants reminded the Court,

and Trustee's counsel conceded, that Trustee's claims against the

individual defendants are viable only against those who actually served as

directors of Corporation and thereby participated in the challenged

decisions by the board.  Though the amended complaint alleges otherwise,

Defendants point out that Jeremy Xiaoming Yin, Jerrod Schreck, and

Darryl Nakamoto were never directors of Corporation and request that

they be dismissed.  Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 8-9,

Dkt. No. 80; Yin Def.'s Mem. in Supp. of Mot. to Dismiss at 14-15, Dkt. No.

78.   In his pleadings, and again at the hearing, Trustee's counsel

acknowledged that these persons had not served as Corporation's

directors, and agreed that the claims against them should be dismissed.

*See, e.g.,* Trustee' Obj. at n. 2, Dkt. No. 86.  Accordingly, the Court finds,

MEMORANDUM OF DECISION, ETC. – 15

concludes and recommends that the District Court dismiss the claims in

Trustee's amended complaint against Jeremy Xiaoming Yin, Jerrod

Schreck, and Darryl Nakamoto with prejudice.

## B.   Count Three

The heading to Count Three of the amended complaint reads

"Failure to Observe Corporate Formalities & Misappropriation of

Corporate Assets."  In the substantive allegations, Trustee explains that

this claim against Defendants is made "in the alternative, in the event that

the Court substantively consolidates [the bankruptcy cases of] Corporation

and Materials."  Am. Compl. at 24, Dkt. No. 74.[9]  In the dismissal motions,

Defendants argue, among other things, that this claim is not yet ripe

---

[9] Trustee filed over a hundred adversary proceedings against Materials's vendors and suppliers seeking to avoid the payments made to them by Corporation as constructively fraudulent transfers.  In an apparent response to these claims, many of the vendor-defendants have asked the Court to substantively consolidate the bankruptcy cases and estates of Corporation and Materials.  *See* Mot. for Substantive Consolidation, *In re Hoku Corporation*, No. 13-40838-JDP, Dkt. No. 412.  A multi-day hearing was recently conducted regarding this motion.  *In re Hoku Corporation*, Dkt. Nos. 780-82, 784-86.  After briefing and oral arguments are concluded, the Court will take the motion under advisement for decision.  *See* Minute Entry, *In re Hoku*, Dkt. No. 786.

MEMORANDUM OF DECISION, ETC. – 16

because the Court has yet to rule on the pending motion for substantive

consolidation in Corporation's bankruptcy case.  Hawaii Def.'s Mem. in

Supp. of Mot. to Dismiss at 21, Dkt. No. 80; Yin Def.'s Mem. in Supp. of

Mot. to Dismiss at 15, Dkt. No. 78.  While other arguments are made

concerning this claim, counsel for all the parties agreed at the hearing that,

because Corporation's bankruptcy case has not been ordered substantively

consolidated with that of Materials, Trustee's Count Three claim is

premature, and that the best course of action would be for the Court to

recommend to the District Court that it be dismissed without prejudice,

such that Trustee could potentially pursue it if the Corporation and

Materials bankruptcy cases were indeed consolidated.

The Court agrees with this suggestion.  Until the Court determines

whether the two bankruptcy cases should be substantively consolidated,

Trustee' claim for "alternative relief" is, at best, speculative and

hypothetical.  Until such a consolidation were to occur, Trustee can not

effectively argue that the rights of Corporation's creditors have been

somehow diluted or diminished by the alleged actions of the individual

MEMORANDUM OF DECISION, ETC. – 17

Defendants.  The Court therefore finds, concludes, and recommends that

the District Court dismiss Count Three without prejudice.[10]

### C.      Count One

#### 1. Delaware Law

The "meat" in Trustee's amended complaint is found in Count One.

According to its title, Count One seeks an award of damages from

Defendants for their "Breach of Duty of Loyalty and Fiduciary Duty to

Corporation & Its Creditors."  Am. Compl. at 19, Dkt. No. 74.  Defendants

argue that Count One fails to adequately plead any claim against them

upon which relief may be granted.  The Court agrees.

Trustee relies upon Delaware law, the state where Corporation was

incorporated, as the basis for Count One.  Defendants agree that State's

law applies.  A "cardinal precept" in the Delaware case law is that

directors, rather than shareholders, manage the business and affairs of a

_____

[10] While a dismissal without prejudice is likely not "dispositive" of this
claim, and the District Court made clear that this Court may therefore resolve it
in this fashion, the Court recommends, for simplicity and clarity, that the District
Court include such relief in any order it enters regarding the motions.

MEMORANDUM OF DECISION, ETC. – 18

corporation.  *Aronson v. Lewis,* 473 A.2d 805, 811 (Del. 1984); *see also*

§ 141(a).  This right to manage "carries with it certain fundamental

fiduciary obligations to the corporation and its shareholders."  *Id.*  At issue

in Count One is whether, as directors, the individual Defendants, acting as

Corporation's directors, have breached their duty of loyalty to

Corporation.

As one would expect, in Delaware, not all poor management

decisions amount to a breach of fiduciary duties.  Instead, as a matter of

policy, directors of Delaware corporations are afforded broad discretion in

making decisions in the management of the affairs of a corporation.  "The

business judgment rule is an extension of these basic principles.  The rule

operates to preclude a court from imposing itself unreasonably on the

business and affairs of a corporation."  *Cede & Co. v. Technicolor, Inc.*, 634

A.2d 345, 360 (Del. 1993) *modified on reargument in part*, 636 A.2d 956 (1994).

Under the Delaware case law, it is presumed "that in making a business

decision that directors of a corporation acted on an informed basis, in good

faith, and in the honest belief that the action was taken in the best interests

MEMORANDUM OF DECISION, ETC. – 19

of the company." *Orman v. Cullman*, 794 A.2d 5, 19 (Del. Ch. 2002) (citing

*Aronson*, 473 A.2d at 812). "As a *procedural guide* the business judgment

presumption is a *rule of evidence* that places the initial burden of proof on

the plaintiff." *Cinerama Inc. v. Technicolor Inc.*, 663 A.2d 1156, 1162 (Del.

1995) (emphasis in original). If a plaintiff fails to satisfy this burden, the

business judgment rule "attaches to protect . . . directors and the decisions

they make." *Id.* (quoting *Cede,* 634 A.2d at 361). Simply explained, absent

proof of facts to the contrary, a court may not substitute its judgment for

that of the board if the latter's decision "can be attributed to any rational

business purpose." *Cede*, 634 A.2d at 361.

On the other hand, "[t]he business judgment rule presumption that

a board acted loyally can be rebutted." *Orman*, 794 A.2d at 21. A plaintiff

can trigger the application of an "entire fairness" standard of review of

board decisions by alleging facts that establish that board members were

"either interested in the outcome of the transaction or lacked the

independence to consider whether the transaction was in the best interest

of its company and all of its shareholders." *Id.* at 22. In doing so, "a

MEMORANDUM OF DECISION, ETC. – 20

plaintiff must allege facts as to the interest and lack of independence of the *individual members* of the board." *Id.* (emphasis in original).  Only if the allegations show that "a *majority* of the director defendants have a financial interest in the transaction or were dominated or controlled by a materially interested director," then the entire fairness standard will apply.  *Id.* (citations omitted) (emphasis in original).

A director is interested if he or she appears on both sides of a transaction, or if he or she expects to personally obtain a material benefit or suffer material detriment that will not be received or suffered by the corporation or all stockholders generally.  *Id.* at 23 (citing *Aronson*, 473 A.2d at 812).  An alleged benefit or detriment is material if it is significant enough "*in the context of the director's circumstances*, as to have made it improbable that the director could perform her duties to the . . . shareholders without being influenced by her overriding personal interest."  *Id.* (quoting *In re General Motors Class H Shareholders Litig.*, 734 A.2d 611, 617 (Del. 1999)) (emphasis in original).

To be independent, a director's decision must be "based on the

MEMORANDUM OF DECISION, ETC. – 21

corporate merits of the subject before the board rather than extraneous considerations or influence." *Id.* at 24. (citing *Aronson*, 473 A.2d at 816). A plaintiff asserting the "control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.'" *Id.* Moreover, a "plaintiff must demonstrate that the director is 'beholden' to the controlling party 'or so under [the controller's] influence that [the director's] discretion would be sterilized." *In re MFW Shareholders Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013).

"Delaware law requires the application of a subjective 'actual person' standard to determine whether a particular director's interest is material and debilitating or that he lacks independence because he is controlled by another." *Orman*, 794 A.2d at 24. This is done on a director-by-director basis. *In re Trados Inc. Shareholder Litig.*, 73 A.3d 17, 44-45 (Del. Ch. 2013).

### 2. Trustee's Allegations and Defendants' Arguments

Trustee alleges that Defendants, as directors, breached their duty of

MEMORANDUM OF DECISION, ETC. – 22

loyalty to Corporation by taking actions in the management of the

company that were not entirely fair to, and that harmed, the shareholders,

namely: (1) by entering into "excessively favorable" polysilicon supply

agreements with Tianwei; (2) incurring hundreds of millions of debt to

complete construction of the Plant even after the market for polysilicon

crashed; and (3) paying Materials's creditors with the funds of

Corporation, which Trustee alleges thereby placed the interests of

Materials's creditors above those of Corporation, and created potentially

avoidable transfers.  Am. Comp. at ¶¶ 91-104, Dkt. No. 74.

Defendants argue that Trustee has failed to plead adequate facts to

avoid application of the business judgment rule, and as a result, the

decisions made by Defendants targeted in Count One of the amended

complaint must, as a matter of law, be presumed to be appropriate.

Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 10-11, Dkt. No. 80.

Defendants argue Trustee's allegations fail to trigger the "entire fairness"

standard.  *Id.* at 13-14; Yin Def.'s Mem. in Supp. of Mot. to Dismiss at 8-14,

Dkt. No. 78.   In addition, as to the allegations in the amended complaint

MEMORANDUM OF DECISION, ETC. – 23

focusing on the numerous loans taken out by Corporation during its last

years of operation, Defendants argue that Trustee is essentially making a

claim for "deepening insolvency," something the Delaware courts do not

allow.  Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 17-18, Dkt. No.

80.  Regarding the payments made by Corporation to Materials's creditors,

Defendants argue that there was no conflict of interest because the

interests of Materials and Corporation were aligned.  *Id.* at 18-20.

 During the hearing, Trustee's counsel acknowledged, and the Court

agrees, that if Trustee's allegations fail to trigger the entire fairness

standard, then the Court must presume that the decisions and transactions

targeted therein were the product of business judgment, not subject to

review by the Court, and that Count One of the amended complaint fails

to state a cognizable claim for relief against Defendants.  Given this

posture, the Court will focus on whether Count One alleges sufficient facts

to trigger review under the entire fairness standard.[11]

---

 [11]  Like Trustee's original complaint, Count One suffers severely from a
lack of factual allegations detailing what decisions were made by the individual
Defendants, when, and why their conduct is actionable.  This is critical in this

MEMORANDUM OF DECISION, ETC. – 24

**a.  Agreements Alleged to be "Excessively Favorable" to Tianwei.**

Providing few details, Trustee generally alleges that the Defendants

breached their duty of loyalty because, acting through the board,

"Corporation entered into agreements to provide Tianwei with polysilicon

that were excessively favorable to Tianwei," and that these transactions

were detrimental to shareholders and creditors.  Am. Compl. at ¶ 97-104,

Dkt. No. 74.  Trustee argues that these otherwise unspecified decisions

must be measured against the entire fairness standard, apparently along

with all decisions made by Corporation's board following the Tianwei

stock purchase agreement, because "the majority of the Board of Directors

after the Stock Purchase Agreement in 2009 was appointed by Tianwei and

was employed [by] and/or closely tied to Tianwei."  *Id.* at ¶ 95.  These

allegations, however, are not adequate to state a claim for relief under

---

case because different directors served the Corporation at the different times the
challenged transactions and actions described in the amended complaint are
alleged to have taken place.  This lack of detail likely renders Trustee's claims
deficient under the *Twombly/Iqbal* pleading standards.  However, because it
supports dismissal, and was the primary focus of Defendants' arguments, in this
decision, the Court bases its decision solely on the impact of Delaware's business
judgment rule.

MEMORANDUM OF DECISION, ETC. – 25

Delaware law.

Alleging that a director is employed by a controlling party can be a material tie that shows a director lacked independence. *Carlson v. Hallinan*, 925 A.2d 506, 530 (Del. Ch. 2006). However, "[i]t is well-settled that a director's appointment at the behest of a controlling shareholder does not suffice to establish a lack of independence." *In re Tyson Foods, Inc.*, 919 A.2d 563, 588 (Del. Ch. 2007) (citing *Aronson*, 473 A.2d at 816); *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 356 (Del. Ch. 1998)). For example, allegations that directors "travel in the same social circles, or have past business relationships with the proponent of the transaction . . . are not enough to rebut the presumption of independence." *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635, 649 (Del. 2014) (citing *Beam ex rel. Martha Stewart Living Omnimedia v. Stewart*, 845 A.2d 1040, 1051–52 (Del. 2004)). And, "the existence of some financial ties between the interested party and the director, without more, is not disqualifying." *Id.*

Here, the amended complaint fails to allege that a majority of Corporation's board lacked independence or were somehow personally

MEMORANDUM OF DECISION, ETC. – 26

interested in Corporation's agreements with Tianwei, or any other

transactions for that matter.  Aside from Zhang and Zhengfei, who

allegedly were employed by Tianwei during the time they served on

Corporation's board, the amended complaint contains no other specific

allegations challenging the independence of the remainder of the board

members.  *See* Am. Compl. at ¶¶ 9, 15, Dkt. No. 74.  Vaguely alleging that

the Tianwei-appointed directors had "strong ties" is conclusory, and is

insufficient standing alone to establish their lack of independence.  Even

assuming Zhang and Zhengfei lacked independence because of their

contemporaneous employment by Tianwei, Trustee fails to plead facts

showing that a majority of the board were not independent.  Absent

specific allegations assailing a majority of the board's independence, the

business judgment rule applies to protect the board in its dealings with

Tianwei, and the Court can not substitute its judgment for that of

Corporation's board of directors.[12]

_____

[12] Even if it were alleged that all of the Defendants were not independent
in making their decisions regarding Tianwei, beyond the conclusory allegation
that terms of the Tianwei deals were "excessively favorable", Trustee has failed

MEMORANDUM OF DECISION, ETC. – 27

### b. Incurring Excessive Debt to Complete the Plant

In another allegation, Trustee asserts that "the actions of the Board of Directors were not entirely fair to other shareholders and creditors after the Stock Purchase Agreement in that Corporation incurred hundreds of millions [of dollars] in debt after the polysilicon market had crashed to complete the Pocatello plant as directed by Tianwei."  Am. Compl. at ¶ 98, Dkt. No. 74.  Defendants argue that any claim based upon Defendants' decision to incur debt to complete the Plant must necessarily fail because, while not explicitly labeled as such, it amounts to a "deepening insolvency" claim, which is not recognized under Delaware Law.  Hawaii Def.'s Mem. in Supp. of Mot. to Dismiss at 22-23, Dkt. No. 80.

Defendants are correct that Delaware courts do not recognize a claim against corporate directors based upon a company's deepening

---

to allege any details about these transactions to demonstrate how Corporation was prejudiced by the directors' decisions.  In other words, even were the entire fairness standard to be triggered concerning these transactions, due to its lack of detail in its factual allegations, the amended complaint is insufficient to survive a Rule 12(b)(6) motion.  As explained above, general allegations that "the board" acted improperly are not sufficient to state a claim against individual directors.

MEMORANDUM OF DECISION, ETC. – 28

insolvency.  *See, e.g., Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906

A.2d 168, 205 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Trust. v.*

*Billett*, 931 A.2d 438 (Del. 2007).  However, "the rejection of an

independent cause of action of deepening insolvency does not absolve

directors of insolvent corporations of responsibility."  *Trenwick*, 931 A.2d at

205.  Instead, a plaintiff can access a "traditional toolkit" to challenge

directors' actions, which "contains causes of action for breach of fiduciary

duty."  *Id.*  However, "if a plaintiff cannot state a claim that the directors of

an insolvent corporation acted disloyally or without due care in

implementing a business strategy, it may not cure that deficiency by

alleging that the corporation became more insolvent as a result of the

failed strategy."  *Id.*

        In this case, Trustee alleges that the directors violated their duty of

loyalty when, upon receipt of the proceeds of the bank loans, Corporation

"transferred significant monies to the above named defendants."  Am.

Compl. at ¶ 66.  However, no further details about these transfers are

provided, such as to whom the funds were transferred, when, or how

MEMORANDUM OF DECISION, ETC. – 29

much.  In the absence of any such detail, it is impossible for the Court to

determine whether a plausible claim exists against any of the individual

Defendants.  Also, and importantly, the amended complaint fails to lay out

the necessary context for the Court to determine whether any such

payments would amount to a *material* interest to any particular

individuals, as is required to trigger the entire fairness standard.  Because

of this, the amended complaint fails to state a plausible claim that the

Defendants acted disloyally, leaving the bare allegation that Corporation

became more insolvent due to a failed strategy.  As this sort of claim is not

a recognized claim for relief under Delaware law, any allegations

regarding these loans fails to state a claim for which relief may be granted.

### c.  Paying Materials's Creditors with Corporation's Funds

Trustee alleges that payments made by Corporation to Materials's

creditors were not entirely fair because, "Corporation, under the direction

of these defendants, created transfers that were potentially voidable . . ."

and because "defendants placed the interest of Materials's creditors ahead

of Corporation's creditors at a time when they owed equal duties to both

MEMORANDUM OF DECISION, ETC. – 30

bodies of creditors." Am. Compl. at ¶ 101, Dkt. No. 74. Trustee insists that

the entire fairness standard applies to such transactions because certain,

unnamed directors were conflicted because they were, at the time

payments were made, serving on the boards of both Materials and

Corporation.

Under Delaware law, "[i]f the interests of the beneficiaries to whom

the dual fiduciary owes duties are aligned, then there is no conflict of

interest. But if the interests of the beneficiaries diverge, the fiduciary faces

an inherent conflict of interest." *Quadrant Structured Prods. Co., Ltd. v.*

*Vertin*, 102 A.3d 155, 186-87 (Del. Ch. 2014).

Even assuming that some or all of Defendants served

simultaneously on the boards of both Corporation and Materials, the

amended complaint states no claim against them because it does not allege

that the interests of the two companies were not aligned when payments

were made to Materials's creditors using Corporation's funds. The

amended complaint acknowledges, as it must, that Corporation

incorporated Materials as a wholly-owned subsidiary to implement the

MEMORANDUM OF DECISION, ETC. – 31

polysilicon manufacturing portion of its overall business plan.  The other

information in the amended complaint makes it clear that construction and

operation of the polysilicon production facility were, by any measure, the

principal focus of Corporation's business goals.  From the allegations in

the amended complaint, the Court infers that Corporation presumably

relied on the Plant's completion to generate a profit and return on its

investment in Materials.  In other words, because it solely owned the

subsidiary, and the polysilicon project was Corporation's principal

undertaking, Materials's success was Corporation's success, and vice

versa.  Because on the face of the amended complaint it appears that the

interests of the two companies were entirely complimentary, the entire

fairness standard should not apply to Corporation's directors' decisions to

pay Materials's bills.  As a result, Trustee's breach of loyalty claim

targeting these particular spending decisions by the board members fails.


### 4.  Duty of Good Faith

While no such allegation appears in the amended complaint, Trustee

MEMORANDUM OF DECISION, ETC. – 32

asserts in his objection to the motions to dismiss, that the entire fairness

standard should apply because the board members acted in "bad faith",

particularly by entering into the January 21, 2010 agreements.  Obj. to Mot.

to Dismiss at 12-13, Dkt. No. 86.  He claims that "there are no obvious

direct benefits to Hoku Corporation from any of these transactions.  These

transactions impacted shareholders by increasing the obligations and

impairing the assets of Hoku Corporation."  *Id.* at ¶ 42.

     "The failure to act in good faith may result in liability because the

requirement to act in good faith 'is a subsidiary element[,]' i.e., a condition,

'of the fundamental duty of loyalty.'"  *Stone ex rel. AmSouth Bancorporation*

*v. Ritter*, 911 A.2d 362, 369–70 (Del. 2006).  And, the business judgment

rule presumption can be rebutted by a showing that directors acted in bad

faith.  *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006).  "A

failure to act in good faith may be shown . . . where the fiduciary

intentionally acts with a purpose other than that of advancing the best

interests of the corporation . . . ."  *Id.* at 67.

     Aside from failing to plead any details as to the conduct of

MEMORANDUM OF DECISION, ETC. – 33

individual directors, the amended complaint lacks any allegations about

any ulterior motives or agendas board members may have had in making

the challenged decisions.  Merely arguing that there was no direct benefit

to Corporation, or that it simply increased Corporation's obligations, is not

enough to state a plausible claim that the board's members intentionally

acted with some other purpose than advancing the bests interests of

Corporation.   Therefore, even had it been properly alleged in the

amended complaint (which it was not), Trustee's arguments in his brief,

that Defendants somehow acted in bad faith, lack any substance and are

inadequate to overcome the motions to dismiss.

### 4.  Dismissal With Prejudice

In sum, the Court finds, concludes and recommends to the District

Court that Trustee's claims asserted against Defendants in Count One for

breach of loyalty should be dismissed.  This is because the Count One

allegations fail to allege facts sufficient to rebut the Delaware case law

presumption that, in making the challenged decisions, Defendants were

exercising appropriate business judgment, and thereby, were insulated

MEMORANDUM OF DECISION, ETC. – 34

from liability for any bad results stemming from those decisions.

Civil Rule 15(a), made applicable here by Rule 7015, allows a party to amend its pleading once as a matter of course, but thereafter, "only with the opposing party's written consent or the court's leave." Civil Rule 15(a)(2). The Court is to "freely give leave [to amend a complaint] when justice so requires." *Id.* In the Ninth Circuit, "[w]hether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1228 (9th Cir. 1997) (citing *Texaco Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991)); *see also Murphy v. Wray (In re Wray)*, 01.1 IBCR 15, 18 (Bankr. D. Idaho 2001).

Under the circumstances, the Court recommends that Count One be dismissed with prejudice.

The Court dismissed Trustee's original complaint because he relied, at least in part, on claims lacking a legal basis under Delaware law, and in addition, because that complaint lacked the specifics of "who, what, when,

MEMORANDUM OF DECISION, ETC. – 35

where, and how" needed to plead a sustainable claim against the several individual defendants. The Court granted leave to Trustee to amend the complaint to cure these deficiencies.

However, as Trustee's second attempt to allege a sufficient claim for relief against Defendants, the amended complaint again falls woefully short of that goal. Presumably, as trustee in Corporation's bankruptcy case since 2013, he has access to the books, records, and other information about Corporation's affairs to properly frame a complaint against its former directors. Simply put, if there is indeed some factual bases to indict Defendants for any damages flowing from their business decisions, Trustee should have been able to explain them in the amended complaint in a fashion sufficient to withstand a Rule 12(b)(6) motion. Instead, both complaints lack factual detail and a proper legal basis for a claim for recovery.

In addition to the lack of specific factual allegations to support Defendants' liability, Trustee's pleadings have also failed to show what, if any, damages Corporation suffered as a result of the subject transactions.

MEMORANDUM OF DECISION, ETC. – 36

Instead, the original and amended complaints show that over the course of

several years, Corporation lacked funds, so agreements were made with

Tianwei whereby funds were borrowed by Corporation, and Materials's

vendors were paid, all to accomplish a singular goal: to finish the Plant, a

task seemingly critical to the success of both Corporation and Materials.

As can be inferred from the ultimate demise of Corporation as described in

the amended complaint, if the Plant failed, so did Corporation. Seen

through this lens, and in light of the changes in the polysilicon market, it

seems clear that the types of decisions made by Corporation's board, while

perhaps very risky ones, were presumptively all designed to salvage

Corporation's only hope of continuing as a going concern: completion and

operation of the Plant. Because of this, the Court is persuaded that any

further attempt by Trustee to amend the complaint to state claims against

Defendants in this action would be futile.

This adversary proceeding has been pending for over a year, during

which time Trustee has been unable to allege facts sufficient to state a

cognizable claim against Defendants. Allowing Trustee to yet again

MEMORANDUM OF DECISION, ETC. – 37

regroup, and requiring Defendants to again respond, would be unfair.

Therefore, the Court recommends to the District Court that Count One of

Trustee's amended complaint against Defendants be dismissed with

prejudice.

## *Conclusion*

For the reasons explained above, the Court finds, concludes and

recommends to the District Court that (1) because they did not serve as

directors of Corporation, all of the Trustee's claims against Defendants

Schreck, Nakamoto, and Yin be dismissed with prejudice; (2) that Count

Three be dismissed without prejudice; and (3) that the claims in Count

One against the Defendants be dismissed with prejudice.

Dated: August 2, 2016



_____
Honorable Jim D. Pappas
United States Bankruptcy Judge


**NOTICE OF RULE 9033 SUBMISSION OF PROPOSED FINDINGS OF
FACT, CONCLUSIONS OF LAW, AND RECOMMENDATIONS**

MEMORANDUM OF DECISION, ETC. – 38

## TO THE DISTRICT COURT

The parties to this action are hereby notified that, pursuant to 28 U.S.C. § 157(c) and Rule 9033(a), and the orders of the District Court, this Memorandum of Decision setting forth the Court's proposed findings of fact, conclusions of law, and recommendations, is hereby submitted to the District Court. *See Exec. Benefits Ins. Agency v. Arkison,* 134 S.Ct. 2165, 2173 2014) (instructing that, if the bankruptcy court lacks the Constitutional authority to finally decide a core matter, "the bankruptcy court should hear the matter and submit proposed findings of fact and conclusions of law to the district court for *de novo* review).  Pursuant to Rule 9033(b), any objections to the findings of fact and conclusions of law must be filed with the Clerk **within 14 days of the date of service** of this Memorandum.  If objections are filed, pursuant to Rule 9033(d), "[t]he district judge shall make a de novo review upon the record, or after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."

MEMORANDUM OF DECISION, ETC. – 39